No. 31,822

EUGENE MARTIN, *Appellee*, v. THE CONTINENTAL OIL COMPANY, THE PHILLIPS PETROLEUM COMPANY, THE MARY JANE OIL COMPANY, J. R. ROBERTSON, ALLEN W. HINKEL, O. E. SUTTER and E. W. PYLE, *Appellants*.

(39 P. 2d 917)

Opinion filed January 26, 1935.

*Chester I. Long, Claude I. Depew, W. E. Stanley, William C. Hook, R. R. Vermilion, Earle W. Evans, J. G. Carey, W. F. Lilleston,* all of Wichita, *William H. Zwick* and *A. L. Hull,* both of Ponca City, Okla., for the appellants; *Redmond S. Cole,* of Tulsa, Okla., of counsel.

*James A. Conly* and *Joe T. Rogers,* both of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is another case of damages for the pollution of a well which furnished the water supply for domestic purposes. (See *Berry v. Shell Petroleum Co.,* 140 Kan. 94, 33 P. 2d 953.)

Plaintiff owned a small house in North Wichita near a large drainage canal constructed by the city. The soil is sandy and porous and the underflow is shallow thereabouts.

In 1928 oil was discovered at Valley Center, a few miles north of Wichita, and the defendant and other oil companies made arrangements with the city of Wichita for the discharge of salt water from their oil wells through a pipe line into the city's sewer system. For its own purposes the city constructed certain locks and gates whereby the salt water from the oil wells might be turned into the drainage canal for flushing it occasionally.

The city's sewer was of concrete and the salt water could do plaintiff no harm if not released therefrom; but the drainage canal

was not lined so as to prevent seepage; and when the salt water was turned into the drainage canal it percolated through the soil and polluted plaintiff's well so that it was unfit for domestic purposes or for irrigation.

Plaintiff's petition alleged that prior to the release of the salt water his house was worth $800, but worth no more than $200 after his well was damaged by the salt water. He also alleged that he was put to trouble and expense to the extent of $200 in carrying wholesome water to his chickens and livestock, for which sum as damages he also prayed.

Issues were joined on the facts and the pertinent law.

When the case was called for trial, on motion of the attorney for the plaintiff the allegations of temporary damages were stricken from the petition, leaving the petition stand only as to the permanent damages to the plaintiff's real estate.

The case was tried before a jury, and evidence pro and con was adduced at length. In the instructions to the jury was one to which neither party objected. It read:

"No. 18. If you find for the plaintiff, then you will allow him an amount of money as compensation for the injury which he has suffered by way of loss or damage to his said real property as a direct result of the acts of the defendants.

"In determining the amount you will allow, you will take the difference between a fair and reasonable market value of his property just prior to the pollution of the water thereunder, and the fair and reasonable market value of the property immediately after such pollution.

"Along with such consideration, you should determine whether or not such pollution is permanent or temporary in nature and character."

The jury returned a general verdict for plaintiff in the sum of $217, and answered special questions, some of which read:

"9. Do you find that the defendants' mineralized water was the sole pollution which affected the underground water flow from which the supply of water underneath the plaintiff's land was derived? A. Yes."

"15. If you find that plaintiff's water well was polluted by defendants' salt water, then state specifically what act or acts of the defendants directly or proximately caused such damage. A. By the discharge of salt water into Wichita drainage canal."

"3. What was the fair market value of the property in question just prior to the adandonment of plaintiff's water well? A. $700.

"4. What was the fair market value of the property in question immediately after the water well on plaintiff's property was abandoned? A. $483.

"5. What elements have you considered in fixing the amount of damage?

A. 1. Pollution of water. 2. Difference between fair market value before and after pollution. 3. Considering permanent pollution not assured based on evidence produced in trial."

Defendant's motion for judgment on the special findings was overruled, and judgment was entered on the general verdict.

Defendant appeals on various grounds, one of which will dispose of this appeal.

Plaintiff sued for both temporary and permanent damages. When the cause came on for trial, plaintiff unqualifiedly abandoned his claim for temporary damages. The jury declared in their special finding No. 5 that the evidence adduced in support of plaintiff's claim for permanent damages was not sufficient to establish it. Their general verdict for $217 in favor of plaintiff is explained by their special findings Nos. 3 and 4. And, in No. 5, the jury specifies what elements they took into consideration in assessing the damages —pollution of water, and difference in fair market value before and after pollution. It is manifest that the jury regarded these elements as temporary, because they expressly stated that they did not consider any permanent damage as assured—that is, established—based on the evidence produced at the trial. In other words, the jury did not consider that plaintiff, who had the burden of proof, had supported his claim to permanent damages by a preponderance of the evidence. The result is, here was a lawsuit where temporary damages were waived, and where permanent damages were not established by the evidence. Consequently defendant's motion for judgment on the special findings was proper and it should have been sustained.

The judgment of the district court is reversed, and the cause remanded with instructions to enter judgment for defendant.

HUTCHISON, J., not sitting.